IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF VIRGINIA

Richmond Division

JOHN REED JAMES,                         )
     Plaintiff,                          )
                                  )
            v.                           )      Civil No. 3:13cv547 (JRS)
                                  )
CAROLYN W. COLVIN,                        )
Acting Commissioner of Social Security,   )
     Defendant.                          )
_____ )

## REPORT AND RECOMMENDATION

John Reed James ("Plaintiff") is 54 years old and previously worked as a floor technician and maintenance attendant. On March 15, 2011, Plaintiff applied for Social Security Disability Benefits ("DIB") stemming from degenerative disc disease and osteoarthritis with an alleged onset date of October 27, 2010. His claim was denied both initially and upon reconsideration. Plaintiff appeared before an Administrative Law Judge ("ALJ") on April 16, 2013, and his claim was again denied. The Appeals Council denied Plaintiff's request for further administrative review, rendering the ALJ's decision the final decision for the Commissioner of Social Security.

Plaintiff now appeals the ALJ's decision in this Court pursuant to 42 U.S.C. § 405(g), arguing that the ALJ erred in assessing Plaintiff's credibility and incorrectly determined Plaintiff's residual functioning capacity ("RFC"). The parties have submitted cross-motions for summary judgment, which are now ripe for review. Having reviewed the parties' submissions and the entire record[1] in this case, the Court is prepared to issue a report and recommendation

---

[1]     The administrative record in this case has been filed under seal, pursuant to E.D. Va. Loc. R. 5 and 7(C). In accordance with these Rules, the Court will endeavor to exclude any personal identifiers such as Plaintiff's social security number, the names of any minor children, dates of

pursuant to 28 U.S.C. § 636(b)(1)(B). Because the ALJ made a factual error in assessing

Plaintiff's medical records when determining Plaintiff's RFC, the Court recommends that

Plaintiff's Motion for Summary Judgment (ECF No. 9) be GRANTED; that Defendant's Motion

for Summary Judgment (ECF No. 13) be DENIED; and that the final decision of the

Commissioner be VACATED and REMANDED for further administrative proceedings in

accordance with this report and recommendation.

## I.    BACKGROUND

Because Plaintiff alleges that the ALJ erred in assessing Plaintiff's credibility and

determining that Plaintiff maintained the ability to perform limited, light work, Plaintiff's work

and medical histories, Plaintiff's hearing testimony, Plaintiff's function report, third-party

testimony and a non-treating physician's opinion are summarized below.

### A.  Education and Work History

Plaintiff was 51 years old when he applied for DIB and completed school through the

ninth grade. (R. at 24, 338.)  During high school, Plaintiff attended regular classes and he could

read, write basic sentences and add and subtract at a rudimentary level. (R. at 24-25.)  Plaintiff

previously worked as a janitor, patient services assistant, road technician, restaurant cook, and

most recently as a floor technician at Walmart and Healthcare Services Group, Inc. (R. at 25-26,

80-81.)  He quit Health Care Services in 2011 after one month of work due to pain. (R. at 26.)

### B.  Medical Records

On March 19, 2009, Michael J. Miller, M.D. treated Plaintiff. (R. at 280.)  Plaintiff

complained of leg pain in his thighs through his feet, which occurred after periods of immobility.

---

birth (except for year of birth), and any financial account numbers from its consideration of
Plaintiff's arguments and will further restrict its discussion of Plaintiff's medical information to
only the extent necessary to properly analyze the case.

(R. at 280.) Dr. Miller found no swelling in Plaintiff's hands, wrists, elbows, shoulders, hips, knees, ankles and feet. (R. at 281.) Muscle strength measured at 5/5. (R. at 281.) Dr. Miller reported mild crepitus on flexion and extension of the knees and myalgias in the lower extremities, but Dr. Miller noted that the cause was not entirely clear. (R. at 281.) Dr. Miller encouraged Plaintiff to follow a weight normalizing diet and recommended that Plaintiff perform general range of motion exercises to upper and lower extremities every day. (R. at 281.)

On March 25, 2009, Plaintiff underwent a CT scan of his abdomen and lumbar spine, and x-rays of his lumbar spine and pelvis. (R. at 271-78.) After reviewing the results of these tests, Ronald E. Robinson, M.D. diagnosed Plaintiff with degenerative joint disease in the lumbar spine, mild fatty infiltration of the liver and bilateral renal cysts. (R. at 270, 278.) In April 2009, Plaintiff had fairly good joint space remaining and no evidence of muscle disease, lumbar stenosis or retroperitoneal fibrosis existed. (R. at 270.) Dr. Miller recommended that Plaintiff follow a weight normalizing diet and exercise regularly, focusing on general range of motion to upper and lower extremities daily. (R. at 270.) Dr. Miller prescribed an anti-inflammatory for Plaintiff to treat his osteoarthritis. (R. at 270.)

On June 10, 2010, Peter VanDerMeid, M.D. provided Plaintiff with an excuse from work, because Plaintiff could not walk or stand for more than five minutes at a time. (R. at 295-96.) Dr. VanDerMeid estimated that Plaintiff's condition would last seven days and noted the unlikelihood of any future episodic flare-ups. (R. at 296-97.)

On August 5, 2010, Plaintiff sought treatment from Dr. VanDerMeid, complaining of pain and aches in his left hand, right knee, hips, lower back and right elbow. (R. at 293.) Dr. VanDerMeid diagnosed Plaintiff with early onset carpal tunnel syndrome in the left hand, right

elbow tendonitis and right knee osteoarthritis. (R. at 294.)  Dr. VanDerMeid recommended physical therapy and home exercise. (R. at 294.)

On October 14, 2010, Plaintiff visited Brian C. Bittner, M.D., complaining of left shoulder, left forearm and right elbow pain. (R. at 311.)  Dr. Bittner indicated that Plaintiff suffered lateral epicondylitis in his right elbow, a rotator cuff sprain, strain in the left shoulder and soft tissue pain in his legs. (R. at 311.)  Dr. Bittner prescribed Solumedrol and Celebrex. (R. at 311.)  On February 21, 2011, Plaintiff returned to Dr. Bittner, who increased Plaintiff's Glipizide dosing. (R. at 317.)

On August 18, 2011, Plaintiff visited the Lloyd F. Moss Free Clinic, complaining of pain in the lower back and right knee. (R. at 360.)  On August 30, 2011, x-rays revealed normal alignment of the lumbar spine with no fracture or subluxation and intact pedicles. (R. at 323.) Images of the right knee demonstrated normal bone mineralization and no fracture. (R. at 324.) Plaintiff had spurs in his patellofemoral and lateral compartments with lateral joint space narrowing, but no erosive changes appeared. (R. at 324.)

On September 16, 2011, George Fish, M.D. conducted a bone mineral analysis, which revealed that Plaintiff had normal bone mineral density. (R. at 325.)  Dr. Fish reported no conspicuous degenerate change and further indicated accentuated disc degeneration and intervertebral disc space narrowing in part of the lumbar spine and mild disc degeneration at other levels within the spine. (R. at 332.)  The sacral iliac joints were unremarkable. (R. at 370.) Dr. Fish recommended regular exercise and maintaining adequate calcium and vitamin D intake. (R. at 325.)

On September 29, 2011, Plaintiff returned to the Lloyd F. Moss Free Clinic, complaining of left hip pain being greater than right hip pain and lower back pain. (R. at 358.)  Plaintiff

4

visited again on October 13, 2011, and had difficulty walking and could not bend or touch his toes. (R. at 357.) He complained of pain in his sacral region, buttocks and hips. (R. at 357.) He also noted that pain was constant in his back and intermittent in his hips. (R. at 357.)

On January 12, 2012, Plaintiff returned to the clinic, complaining of swelling in his right knee. (R. at 394.) An x-ray revealed tricompartmental osteoarthritic changes with osteophyte formation and joint space narrowing, greatest within the lateral compartment. (R. at 415.) No acute fracture appeared and only a small degree of supratellar joint effusion existed. (R. at 415.) Plaintiff followed up on January 26, 2012, and received medications for osteoarthritis in the right knee. (R. at 393.)

Plaintiff returned to the clinic on March 23, 2012, complaining of swelling and stiffness in his knees and buckling of the right knee. (R. at 391.) Plaintiff used a cane and received instructions on its proper use. (R. at 391-92.) On September 6, 2012, Plaintiff complained of pain in his right knee, left shoulder, back and both hips. (R. at 382.) The right knee appeared swollen and Plaintiff reported that it buckled at times. (R. at 382.) On September 13, 2012, Plaintiff returned to the Lloyd F. Moss Free Clinic after falling on a wet sidewalk and again complained of knee swelling. (R. at 390.) An x-ray of Plaintiff's knee revealed no fracture, subluxation or destructive lesion. (R. at 412.) However, moderate tricompartmental joint space narrowing and osteophyte formation in the lateral compartment appeared. (R. at 412.) A shoulder x-ray revealed minimal osteoarthritis of the left AC joint and no acute osseous abnormality. (R. at 413.)

On November 6, 2012, Plaintiff returned to the Lloyd F. Moss Free Clinic, complaining of shoulder aches, and the physician recommended physical therapy. (R. at 381.) On February 25, 2013, Plaintiff returned for a check-up, during which he was diagnosed with severe

osteoarthritis in the right knee and type II diabetes.  (R. at 380.)  Plaintiff's right knee appeared

chronically swollen and slightly warm.  (R. at 380.)  It was recommended that Plaintiff attend

physical therapy and undergo a knee replacement.  (R. at 380.)

    C.  Non-treating State Agency Opinion

On September 30, 2011, Victoria Grady, M.D. completed a consultative examination and

opined that Plaintiff could stand for four hours, walk for four hours or sit for four hours in an

eight-hour work day.  (R. at 342.)  Plaintiff would need to change positions due to pain and

weakness in the lower extremities.  (R. at 342.)  Dr. Grady further determined that Plaintiff could

lift or carry 10 pounds occasionally.  (R. at 342.)  She noted that Plaintiff needed a cane at all

times.  (R. at 342.)  Plaintiff could reach, handle, feel, grasp or finger frequently, and could bend,

stoop, crouch or squat occasionally due to back pain and weakness.  (R. at 342.)

    D.  Function Reports

On July 25, 2011, Plaintiff completed a function report in which he indicated that he

lived at home with his family.  (R. at 225.)  He spent his days lying or sitting around.  (R. at

225.)  Plaintiff rarely cooked and did not perform any yard work or household chores.  (R. at

227.)  His pain affected his ability to sleep at night or nap during the day.  (R. at 226.)

Plaintiff reported difficulty putting on pants, washing his legs and feet in the bath,

shaving and eating.  (R. at 226.)  He could drive by himself, but he could barely walk after

driving for thirty minutes.  (R. at 226.)  Plaintiff shopped once a month, picking up a few light

items, such as bread.  (R. at 228.)  He reported no difficulty paying bills, counting change,

handling a savings account or using a checkbook/money order.  (R. at 228.)

Plaintiff's hobbies included reading and watching television, which he did most of the

time.  (R. at 229.)  He attended church and a bible study with his wife.  (R. at 229.)  He could not

walk very far and needed 20-30 minutes before resuming walking. (R. at 230.) Plaintiff had no difficulty following written instructions, finishing what he started, handling stress and dealing with change. (R. at 230-31.) Plaintiff bought a cane, because he thought it would be helpful and he did not have insurance to visit a doctor. (R. at 231.) He used the cane after sitting or lying for long periods of time. (R. at 231.)

E. Plaintiff's Testimony

On April 16, 2013, Plaintiff, represented by counsel, appeared for a hearing in front of an ALJ. (R. at 19.) Plaintiff testified that he was 53 years old and lived with his wife and two children. (R. at 23-24.) Plaintiff was 5'6" and weighed approximately 230 pounds. (R. at 27.) He and his family used food stamps and his wife received supplemental security income. (R. at 46.) Plaintiff completed the ninth grade, could read and write, and could add and subtract "enough to not be cheated." (R. at 24-25.) He had a valid driver's license and could follow verbal and written instructions. (R. at 38, 45.) He could not use a computer, but completed a work application online with assistance. (R. at 38.) Plaintiff spent time in jail for unpaid fines related to a suspended driver's license. (R. at 36-37.)

Plaintiff took Crestor for cholesterol, Metformin and Glucotrol for diabetes, Diclofenac for osteoarthritis and Tramadol for pain. (R. at 31-33, 267.) The medications caused drowsiness, dizziness and sleepiness. (R. at 45.) Periodically, Plaintiff received cortisone injections for his pain, and they relieved his pain for about one month. (R. at 48.) Plaintiff previously underwent right foot surgery for bone repair in the 1980s, right ankle surgery for tendonitis in 2006 or 2007, and two right knee surgeries for cartilage and tendon repair in the 1980s and 1990s. (R. at 29-30, 43.)

Plaintiff described the pain in his legs as sharp, starting in both hips and going down through the knee. (R. at 51.) Plaintiff had to lie down three to four times a day for approximately one hour each time. (R. at 52.) Plaintiff laid in a recliner and elevated his feet three hours each day. (R. at 52.) He slept two hours each night. (R. at 52.) A typical day for Plaintiff included waking up at 8:00 a.m., brushing his teeth, washing his face, lying down for an hour, getting up at 10:30 a.m. to take medications, eating breakfast, drinking coffee, napping until 12:30 p.m., eating lunch, listening to the radio and lying back down around 1:00 p.m. until 4:00 p.m. (R. at 53-54.) Plaintiff went to bed at 9:00 p.m., but had difficulty sleeping at night once his medications wore off. (R. at 54.)

Plaintiff could sit for an hour at a time, stand for thirty minutes at a time and walk the distance of one low and level city block. (R. at 33.) He could lift a glass of water, but not a gallon of milk. (R. at 34.) Plaintiff used a cane, but it was not prescribed. (R. at 27-28.) However, he spoke with a physician at the Lloyd F. Moss Free Clinic about the use of a cane. (R. at 27-28.) Plaintiff's doctor recommended that he continue using the cane, because it helped with balance and took pressure off of the knee when walking. (R. at 47.) He used the cane "most of the time," including when walking in the house, but he could walk from the bedroom to the kitchen and back without using it. (R. at 28, 33.)

Plaintiff had friends, but did not visit with them. (R. at 37.) He could bathe on his own, but could not take out the garbage, cook, vacuum, sweep, rake leaves or mow the lawn. (R. at 40-42.) He "probably could" load a dishwasher or wash dishes but doing so would "cause some problems down the road." (R. at 42-44.)

F.  Third-party Testimony

Plaintiff's wife, Evelyn James, testified during the hearing on April 16, 2013. (R. at 58.) Mrs. James explained that she has a learning disability that affects her ability to understand and complete paperwork. (R. at 58-59.) Mrs. James performed all of the laundry, cooking and cleaning in the house. (R. at 59-60.) She testified that Plaintiff did not sleep well at night and he spent most of his time lying down in the bed or the recliner. (R. at 60.) Mrs. James further noted that Plaintiff experienced severe pain. (R. at 62.)

G.  Vocational Expert Testimony

During the hearing, an impartial vocational expert ("VE") testified. The ALJ asked the VE if a hypothetical person of the same age, education, and work experience as Plaintiff, who could sit, stand or walk six hours in an eight-hour day, frequently lift and carry 10 pounds, occasionally lift and carry 20 pounds, climb stairs or ramps, stoop, kneel, crouch or crawl, never climb ladders, ropes or scaffolds, and needed a cane to walk to the workstation only, but would not need it while working, could perform Plaintiff's past work. (R. at 65.) The VE stated that such a person could not perform Plaintiff's past work. (R. at 65.) However, the VE explained that such an individual could work as a router, small products assembler or a laundry sorter, and such jobs existed in significant numbers in the national economy. (R. at 65-66.)

## II.    PROCEDURAL HISTORY

On March 15, 2011, Plaintiff filed an application for DIB, claiming disability due to degenerative disc disease and osteoarthritis with an alleged onset date of October 27, 2010. (R. at 8.) The claim was initially denied on October 6, 2011, and upon reconsideration on December 9, 2011. (R. at 8.) Plaintiff filed a written request for a hearing on January 5, 2012, and the ALJ held a hearing on April 16, 2013. (R. at 8.) On April 24, 2013, the ALJ denied benefits for

Plaintiff, concluding that he was not disabled under the Act. (R. at 13-14.) The Appeals Council denied Plaintiff's request for review on June 19, 2013, rendering the ALJ's decision the final decision of the Commissioner subject to judicial review by this Court. (R. at 1-3.)

### III.    QUESTIONS PRESENTED

1. Did the ALJ err in assessing Plaintiff's credibility?

2. Does substantial evidence support the ALJ's determination that Plaintiff maintained the ability to perform limited light work?

### IV.    STANDARD OF REVIEW

In reviewing the Commissioner's decision to deny benefits, the Court is limited to determining whether substantial evidence in the record supports the Commissioner's decision and whether the proper legal standards were applied in evaluating the evidence. *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012) (citing *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005)). Substantial evidence is more than a scintilla, is less than a preponderance and is the kind of relevant evidence that a reasonable mind could accept as adequate to support a conclusion. *Hancock*, 667 F.3d at 472; *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996).

To determine whether substantial evidence exists, the Court must examine the record as a whole, but may not "'undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [ALJ].'" *Hancock*, 667 F.3d at 472 (quoting *Johnson*, 434 F.3d at 653). In considering the decision of the Commissioner based on the record as a whole, the Court must "'take into account whatever in the record fairly detracts from its weight.'" *Breeden v. Weinberger*, 493 F.2d 1002, 1007 (4th Cir. 1974) (quoting *Universal Camera Corp. v. N.L.R.B.*, 340 U.S. 474, 488 (1951)). The Commissioner's findings as to any fact, if substantial evidence in the record supports the findings, are conclusive and must be affirmed regardless of whether the reviewing court disagrees with such findings. *Hancock*,

667 F.3d at 477. If substantial evidence in the record does not support the ALJ's determination or if the ALJ has made an error of law, the Court must reverse the decision. *Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987).

A sequential evaluation of a claimant's work and medical history is required to determine if a claimant is eligible for benefits. 20 C.F.R. §§ 416.920, 404.1520; *Mastro v. Apfel*, 270 F.3d 171, 177 (4th Cir. 2000). An ALJ conducts the analysis for the Commissioner, and it is that process that a court must examine on appeal to determine whether the correct legal standards were applied, and whether substantial evidence in the record supports the resulting decision of the Commissioner. *Mastro*, 270 F.3d at 176-77.

The first step in the sequence is to determine whether the claimant was working at the time of the application and, if so, whether the work constituted "substantial gainful activity" ("SGA"). 20 C.F.R. §§ 416.920(b), 404.1520(b). SGA is work that is both substantial and gainful as defined by the Agency in the C.F.R. Substantial work activity is "work activity that involves doing significant physical or mental activities. Your work may be substantial even if it is done on a part-time basis or if you do less, get paid less, or have less responsibility than when you worked before." 20 C.F.R. § 404.1572(a). Gainful work activity is work activity done for "pay or profit, whether or not a profit is realized." 20 C.F.R. § 404.1572(b). Taking care of oneself, performing household tasks or hobbies, therapy or school attendance, and the like, are not generally considered substantial gainful activities. 20 C.F.R. § 404.1572(c). If a claimant's work constitutes SGA, the analysis ends and the claimant must be found "not disabled," regardless of any medical condition. *Id.*

If the claimant establishes that he did not engage in SGA, the second step of the analysis requires him to prove that he has "a severe impairment . . . or combination of impairments which

significantly limit[s] [his] physical or mental ability to do basic work activities." 20 C.F.R.

§ 416.920(c); *see also* 20 C.F.R. § 404.1520(c).  To qualify as a severe impairment that entitles

one to benefits under the Act, it must cause more than a minimal effect on one's ability to

function.  20 C.F.R. § 404.1520(c).

At the third step, if the claimant has an impairment that meets or equals an impairment

listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (listing of impairments) and lasts, or is

expected to last, for twelve months or result in death, it constitutes a qualifying impairment and

the analysis ends.  20 C.F.R. §§ 416.920(d), 404.1520(d).  If the impairment does not meet or

equal a listed impairment, then the evaluation proceeds to the fourth step in which the ALJ must

determine whether the claimant can return to his past relevant work[2] based on an assessment of

the claimant's RFC[3] and the "physical and mental demands of work [the claimant] has done in

the past." 20 C.F.R. §§ 416.920(e), 404.1520(e).  If such work can be performed, then benefits

will not be awarded.  *Id.*  The burden of proof remains with the claimant through step four of the

analysis, such that he must prove that his limitations preclude him from performing his past

relevant work. *Bowen v. Yuckert,* 482 U.S. 137, 146 n.5 (1987); *Hancock*, 667 F.3d at 472.

However, if the claimant cannot perform his past work, the burden then shifts to the

Commissioner at the fifth step to show that, considering the claimant's age, education, work

---

[2]     Past relevant work is defined as SGA in the past fifteen years that lasted long enough for
an individual to learn the basic job functions involved. 20 C.F.R. §§ 416.965(a), 404.1565(a).

[3]     RFC is defined as "an assessment of an individual's ability to do sustained work-related
physical and mental activities in a work setting on a regular and continuing basis.  A 'regular and
continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule."
SSR-96-8p.  When assessing the RFC, the adjudicator must discuss the individual's ability to
perform sustained work activities in an ordinary work setting on a regular and continuing basis
(*i.e.*, 8 hours a day, 5 days a week, or an equivalent work schedule), and describe the maximum
amount of each work-related activity the individual can perform based on the evidence available
in the case record. *Id.* (footnote omitted).

experience and RFC, the claimant is capable of performing other work that is available in significant numbers in the national economy. 20 C.F.R. §§ 416.920(f), 404.1520(f); *Powers v. Apfel*, 207 F.3d 431, 436 (7th Cir. 2000) (citing *Yuckert*, 482 U.S. at 146 n.5). The Commissioner can carry her burden in the final step with the testimony of a VE. When a VE is called to testify, the ALJ's function is to pose hypothetical questions that accurately represent the claimant's RFC based on all evidence on record and a fair description of all of the claimant's impairments, so that the VE can offer testimony about any jobs existing in the national economy that the claimant can perform. *Walker v. Bowen*, 889 F.2d 47, 50 (4th Cir. 1989). Only when the hypothetical posed represents all of the claimant's substantiated impairments will the testimony of the VE be "relevant or helpful." *Id.* If the ALJ finds that the claimant is not capable of SGA, then the claimant is found to be disabled and is accordingly entitled to benefits. 20 C.F.R. §§ 416.920(f)(1), 404.1520(f)(1).

## V.     ANALYSIS

### A. The ALJ's Decision

The ALJ held a hearing on April 16, 2013, during which Plaintiff, Plaintiff's wife and a VE testified. (R. at 19-72.) On April 24, 2013, the ALJ issued a written opinion, determining that Plaintiff was not disabled under the Act. (R. at 9-14.) The ALJ followed the five-step sequential evaluation process as established by the Social Security Act in analyzing whether Plaintiff was disabled. (R. at 9-10); *see also* 20 C.F.R. § 404.1520(a).

First, the ALJ determined that Plaintiff had not engaged in SGA since Plaintiff's onset date of October 27, 2010. (R. at 10.) At step two, the ALJ determined that Plaintiff suffered severe impairments in the form of degenerative disc disease of the spine and osteoarthritis. (R. at 10.) At step three, the ALJ determined that Plaintiff did not have an impairment or combination

13

of impairments that met or equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. *See* 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526; (R. at 10-11).

Next, the ALJ found that Plaintiff had the ability to perform light work, except that he could only occasionally climb stairs and ramps, stoop, kneel, crouch and crawl, but could never climb ladders, ropes or scaffolds. (R. at 11.)  He could frequently balance and needed a cane to walk to the workstation, but did not need one while working. (R. at 11.)  Plaintiff could stand for one hour at a time before needing to sit for two to three minutes. (R. at 11.)  In reaching this conclusion, the ALJ considered objective medical evidence and noted that no mention of Plaintiff's use of a cane existed in Plaintiff's most recent medical records. (R. at 12.)

Also, while assessing Plaintiff's RFC, the ALJ found that, although Plaintiff suffered impairments, Plaintiff's testimony and statements describing the intensity, persistence or functionally limiting effects of pain and other information as to symptoms were inconsistent with the objective evidence. (R. at 12.)  Specifically, the ALJ concluded that the objective medical evidence, including diagnostic studies, did not support a finding of disability. (R. at 12.)  The treatment records did not contain pain complaints in a frequency or severity that would prevent the Plaintiff from performing at least light work. (R. at 12.)  Physical and neurological examinations were generally within normal limits, Plaintiff's cane was not prescribed, and knee x-rays showed only mild to moderate degenerative changes. (R. at 12.)  The ALJ categorized Plaintiff's past treatments as "conservative," and no medical evidence of any significant side effects from his medication existed. (R. at 12.)  Finally, despite Plaintiff's impairments and symptoms, the ALJ noted that Plaintiff drove himself 40 miles to the hearing. (R. at 12.)

The ALJ then determined at step four of the analysis that Plaintiff could not perform his past work. (R. at 12.)  At step five, after considering Plaintiff's age, education, work experience

and RFC, and after consulting a VE, the ALJ determined that a significant number of jobs exist in the national economy that Plaintiff could perform. (R. at 13.) Accordingly, the ALJ concluded that Plaintiff was not disabled and was employable; therefore, he was not entitled to benefits. (R. at 14.)

Plaintiff challenges the ALJ's decision, arguing that the ALJ incorrectly assessed Plaintiff's credibility and erred in determining that Plaintiff maintained the ability to perform limited light work. (Pl.'s Mem. in Supp. of Mot. for Summ. J. ("Pl.'s Mem.") (ECF No. 9) at 9-25.) Defendant maintains that substantial evidence supports the ALJ's decision. (Def.'s Mot. for Summ. J. and Mem. in Supp. ("Def.'s Mem.") (ECF No. 13) at 10-22.)

B. The ALJ did not err in assessing Plaintiff's credibility.

Plaintiff argues that the ALJ erred by relying on improper bases when assessing Plaintiff's credibility and that substantial evidence does not support the ALJ's determination. (Pl.'s Mem. at 9-25.) Specifically, Plaintiff argues that the ALJ incorrectly considered that Plaintiff's cane was not prescribed by a physician, that Plaintiff did not experience significant side effects from his medication, that Plaintiff's treatment was conservative, that Plaintiff experienced problems with his left knee and that Plaintiff drove to the hearing. (Pl.'s Mem. at 9-25.) Plaintiff further contends that substantial evidence does not support the ALJ's reasoning that Plaintiff's treatment records demonstrate severe pain, that the medical records fail to demonstrate a finding of disability, that Plaintiff's examinations have been within normal limits and that the x-rays demonstrate mild to moderate degenerative changes. (Pl.'s Mem. at 9-25.) Defendant maintains that the ALJ applied the correct legal standard and substantial evidence supports the ALJ's assessment. (Def.'s Mem. at 10-22.)

After step three of the ALJ's sequential analysis, but before deciding whether a claimant can perform past relevant work at step four, the ALJ must determine the claimant's RFC. 20 C.F.R. §§ 416.920(e)-(f), 416.945(a)(1). The RFC must incorporate impairments supported by the objective medical evidence in the record and those impairments that are based on the claimant's credible complaints. In evaluating a claimant's subjective symptoms, the ALJ must follow a two-step analysis. *Craig*, 76 F.3d 585, 594 (4th Cir. 1996); SSR 96-7p; 20 C.F.R. §§ 404.1529(a) and 416.929(a). The ALJ must first determine whether an underlying medically determinable physical or mental impairment or impairments that reasonably could produce the individual's pain or other related symptoms exists. *Craig*, 76 F.3d at 594; SSR 96-7p, at 1-3. In doing so, the ALJ must consider all of the medical evidence in the record. *Craig*, 76 F.3d at 594-95; SSR 96-7p, at 5, n.3; *see also* SSR 96-8p, at 13 (specifically stating that the "RFC assessment must be based on *all* of the relevant evidence in the case record") (emphasis added). If the underlying impairment reasonably could be expected to produce the individual's pain, then the second part of the analysis requires the ALJ to evaluate a claimant's statements about the intensity and persistence of the pain and the extent to which it affects the individual's ability to work. *Craig*, 76 F.3d at 595. The ALJ's evaluation must take into account "all the available evidence," including a credibility finding of the claimant's statements regarding the extent of the symptoms, and the ALJ must provide specific reasons for the weight given to the individual's statements. *Craig*, 76 F.3d at 595-96; SSR 96-7p, at 5-6, 11.

This Court must give great deference to the ALJ's credibility determinations. *Eldeco, Inc. v. N.L.R.B.*, 132 F.3d 1007, 1011 (4th Cir. 1997). The Fourth Circuit has determined that "[w]hen factual findings rest upon credibility determinations, they should be accepted by the reviewing court absent 'exceptional circumstances.'" *Id.* (quoting *N.L.R.B. v. Air Prods. &*

*Chems., Inc.*, 717 F.2d 141, 145 (4th Cir. 1983)). Therefore, this Court must accept the ALJ's

factual findings and credibility determinations unless "'a credibility determination is

unreasonable, contradicts other findings of fact, or is based on an inadequate reason or no reason

at all.'" *Id.* (quoting *N.L.R.B. v. McCullough Envtl. Servs., Inc.*, 5 F.3d 923, 928 (5th Cir.

1993)).

Here, the ALJ determined that Plaintiff's osteoarthritis and diabetes could produce some

of his alleged symptoms; however, Plaintiff's statements concerning the intensity, persistence

and limiting effects of these symptoms were not entirely credible. (R. at 12.) In making this

assessment, the ALJ reasoned that the treatment records do not reflect frequent and severe pain,

Plaintiff's medical records do not support a finding of disability, Plaintiff's examinations were

within normal limits, Plaintiff was not prescribed a cane, Plaintiff's x-rays demonstrated mild to

moderate degenerative changes, Plaintiff required only conservative treatment, no medical

evidence exists of any significant side effects from Plaintiff's medications and Plaintiff drove

himself to the hearing. (R. at 12.) In making his credibility assessment, the ALJ considered the

objective medical evidence and other evidence, based on the requirements of 20 C.F.R.

§ 404.1529 and SSRs 96-4p and 96-7p. (R. at 11-12.)

Plaintiff argues that the ALJ erred when considering that Plaintiff's cane was not

prescribed by a physician, that Plaintiff did not experience significant side effects from his

medication, that Plaintiff's treatment was conservative, that Plaintiff experienced problems with

his left knee and that Plaintiff drove to the hearing. (Pl.'s Mem. at 9-25.) Plaintiff further

contends that the ALJ's finding that Plaintiff's treatment records demonstrate severe pain that

would prohibit Plaintiff from performing at least light work, that the medical records fail to

demonstrate a finding of disability, that Plaintiff's examinations have been within normal limits

and that the x-rays demonstrate mild to moderate degenerative changes lack the support of substantial evidence. (Pl.'s Mem. at 9-25.) The Court now addresses each argument.

1. Substantial evidence supports the ALJ's finding that the frequency and severity of Plaintiff's pain complaints would not prevent Plaintiff from performing at least light work.

In finding that Plaintiff's complaints of pain were not entirely credible, the ALJ noted that the treatment records fail to reflect pain complaints of a frequency or severity that would prevent the claimant from performing at least light work. (R. at 12.) Plaintiff argues that the record does not support this conclusion. (Pl.'s Mem. at 10-12.) Defendant maintains that substantial evidence supports the determination. (Def.'s Mem. at 11-14.)

It is well established that Plaintiff's subjective allegations of pain are not, alone, conclusive evidence that Plaintiff is disabled. *Mickles v. Shalala*, 29 F.3d 918, 919 (4th Cir. 1994). The Fourth Circuit has determined that "subjective claims of pain must be supported by objective medical evidence showing the existence of a medical impairment which could reasonably be expected to produce the actual pain, in the amount and degree, alleged by the claimant." *Craig*, 76 F.3d at 591.

After Plaintiff's alleged onset date of October 27, 2010, Plaintiff complained of pain to his physicians on several occasions. (R. at 357-58, 360, 380, 382, 384, 391, 394.) On several other occasions, doctors did not note that Plaintiff complained of pain, including his appointments on February 1, 2011, February 21, 2011 and January 26, 2012. (R. at 315, 317, 393.) Furthermore, Dr. Miller reported that the cause of Plaintiff's pain complaints was not entirely clear. (R. at 281.) Plaintiff received cortisone injections for his pain and they relieved his pain for about one month. (R. at 48.)

Although Plaintiff complained of pain during some doctors' visits, substantial evidence supports a finding that it did not preclude him from performing at least light work. Performing light work involves "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. § 404.1567. Further, light work "requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls." Id. Plaintiff's doctors recommended physical therapy and home exercise. (R. at 270, 281, 294, 325.) In June 2010, Dr. VanDerMeid provided Plaintiff with an excuse from work, because Plaintiff could not walk or stand for more than five minutes at a time, but Dr. VanDerMeid indicated that the condition would last only seven days without flare-ups in the future. (R. at 296-97.) Furthermore, Plaintiff could drive and bathe himself. (R. at 40-42.) He shopped monthly for small items and prepared meals about twice a month. (R. at 227-28.) Plaintiff could sit for an hour at a time, stand for thirty minutes at a time and walk a block. (R. at 33.) Therefore, substantial evidence supports the ALJ's determination that Plaintiff did not experience pain of the frequency or severity that would limit him from performing light work.

2. Substantial evidence supports the ALJ's determination that the medical evidence does not support a finding of disability.

When assessing Plaintiff's credibility, the ALJ reasoned that Plaintiff's objective medical evidence does not support a finding of disability. (R. at 12.) Plaintiff argues that the objective medical records do not support the ALJ's reasoning, because the medical records support Plaintiff's statements that he cannot walk or stand. (Pl.'s Mem. at 12-16.) Defendant contends that substantial evidence supports the ALJ's determination. (Def.'s Mem. at 15.)

Substantial evidence supports the ALJ's conclusion that the objective medical records do not demonstrate a finding of disability. In March 2009, Dr. Miller found no swelling in Plaintiff's hands, wrists, elbows, shoulders, hips, knees or ankles, and noted that Plaintiff's

19

muscle strength measured at 5/5. (R. at 281.) Plaintiff's CT scan revealed no evidence of

muscle disease, lumbar stenosis or retroperitoneal fibrosis. (R. at 270.) In August 2011, x-rays

revealed normal alignment of the lumbar spine with no fracture or subluxation and intact

pedicles. (R. at 323.) Images of the right knee demonstrated normal bone mineralization with

no fracture and no erosive changes. (R. at 324.) Plaintiff's bone mineral analysis returned

normal results with no conspicuous degenerate change or concerning lesions. (R. at 332.)

Therefore, substantial evidence supports the ALJ's reasoning.

3. Substantial evidence supports the ALJ's conclusion that physical and neurological
   examinations have been generally within normal limits.

In diminishing Plaintiff's credibility, the ALJ reasoned that Plaintiff's physical and

neurological examinations were generally within normal limits. (R. at 12.) Plaintiff argues that

the ALJ failed to provide any evidence to support this assertion and that no such evidence exists

in the record. (Pl.'s Mem. at 16-18.) Defendant maintains that substantial evidence supports the

determination. (Def.'s Mem. at 15.)

In reaching the conclusion that Plaintiff's physical and neurological examinations were

generally within normal limits, the ALJ cited to Plaintiff's medical records from the Lloyd F.

Moss Free Clinic to support the assertion. (R. at 12.) Indeed, substantial evidence from within

these medical records supports the ALJ's determination. During Plaintiff's September 13, 2011

and December 15, 2011 appointments, Plaintiff underwent respiratory examinations that resulted

in normal findings. (R. at 386, 388.) Plaintiff's experienced normal results after his

cardiovascular examination on December 15, 2011, and his carotid examination on September

13, 2011. (R. at 386, 388.) On March 23, 2012, Plaintiff's SLR testing remained within normal

limits. (R. at 391-92.) Plaintiff demonstrated equal grip during his evaluation on November 10,

2012. (R. at 381.) Upon examination, he could reach up without pain. (R. at 382.) Plaintiff's

20

lung appeared clear and he did not wheeze. (R. at 385.) Therefore, the ALJ did not err in making his determination.

4. The ALJ did not err in finding that Plaintiff was not prescribed his use of a cane.

When assessing Plaintiff's credibility, the ALJ noted that Plaintiff had not been prescribed an assistive device for ambulation. (R. at 12.) Plaintiff argues that this consideration was not appropriate. (Pl.'s Mem. at 18.) However, while making this argument, Plaintiff concedes that the Act dictates that an ALJ should make such a consideration. (Pl.'s Mem at 18.) Defendant maintains that the ALJ properly considered that Plaintiff was not prescribed a cane. (Def.'s Mem. at 15-16.)

The ALJ's evaluation must take into account "all the available evidence" absent contrary evidence or improper reason. *Craig*, 76 F.3d 595-96; SSR 96-7p, at 5-6, 11. Plaintiff does not contend that the ALJ's reason was improper and further concedes that such consideration is typical in these proceedings. (Pl.'s Mem. at 18.) Therefore, the ALJ's acted properly when considering that Plaintiff was not prescribed the use of a cane. Further, Plaintiff concedes that the record demonstrates that Plaintiff was not prescribed a cane. (Pl.'s Mem. at 19.) Indeed, Plaintiff testified that he bought a cane on his own and that no physician prescribed it. (R. at 231.) Therefore, the ALJ did not err.

5. The ALJ did not err in finding that x-rays demonstrate mild to moderate degenerative changes.

The ALJ also discredited Plaintiff's statements about his symptoms on the basis that the x-rays of Plaintiff's knees demonstrated only mild to moderate degenerative disc changes. (R. at 12.) Plaintiff argues that the ALJ incorrectly considered x-rays of Plaintiff's left knee, because Plaintiff only alleged disability as to his right knee. (Pl.'s Mem. at 21-22.) Further, because the ALJ should have only considered Plaintiff's right knee x-rays, Plaintiff argues that substantial

evidence does not support the ALJ's assertion, because the x-rays of Plaintiff's right knee fail to demonstrate mild degenerative changes. (Pl.'s Mem. at 21-22.) Defendant maintains that the ALJ properly considered Plaintiff's x-rays and that substantial evidence supports the ALJ's finding. (Def.'s Mem. at 20.)

Because the ALJ must take into account "all the available evidence" in the medical record, the ALJ properly considered Plaintiff's knee x-rays. *Craig*, 76 F.3d 595-96; SSR 96-7p, at 5-6, 11. Further, substantial evidence supports the ALJ's finding that Plaintiff's knee x-rays demonstrated mild to moderate degenerative changes. Plaintiff underwent right knee x-rays on August 18, 2011, which demonstrated normal bone mineralization and no fracture. (R. at 324.) No erosive changes appeared. (R. at 324.) On September 13, 2012, moderate tricompartmental joint space narrowing and osteophyte formational in the lateral compartment appeared in images from Plaintiff's right knee x-ray. (R. at 412.) An x-ray of Plaintiff's left knee showed minimal medial and patellofemoral compartmental osteophyte formation and minimal arthritic changes in the left knee. (R. at 377.) Accordingly, the ALJ did not err in concluding that Plaintiff's knee x-rays revealed only mild to moderate degenerative changes.

6. The ALJ did not err by considering that Plaintiff required only conservative treatment.

When assessing Plaintiff's credibility, the ALJ reasoned that Plaintiff required only conservative treatment. (R. at 12.) Plaintiff argues that characterizing Plaintiff's treatment as conservative was improper, because the record does not support such a characterization. (Pl.'s Mem. at 22-23.) Defendant contends that substantial evidence supports the ALJ's determination. (Def.'s Mem. at 20-21.)

Substantial evidence supports the ALJ's determination that Plaintiff underwent conservative treatment. Plaintiff never sought surgery or hospitalization after his onset date.

Instead, Dr. VanDerMeid recommended physical therapy and home exercise. (R. at 294.) Dr. Miller repeatedly encouraged Plaintiff to diet, recommended that Plaintiff perform general range of motion exercises daily and prescribed an anti-inflammatory. (R. at 270, 281.) Additionally, Plaintiff received medication to treat the osteoarthritis in the right knee. (R. at 393.) Plaintiff underwent cortisone injections for his pain. (R. at 48.) A nurse practitioner recommended that Plaintiff attend physical therapy and noted that Plaintiff should see an orthopedic doctor regarding a knee replacement. (R. at 380.) However, nothing in the record demonstrates that Plaintiff underwent such treatment and Plaintiff concedes that he never underwent surgery. (Pl.'s Mem at 22.) Therefore, the ALJ did not err in determining that Plaintiff underwent conservative treatment.

      7. The ALJ did not err in considering that Plaintiff did not experience any side effects.

      In further explaining his basis for discrediting Plaintiff's statements, the ALJ indicated that no medical evidence of significant side effects exists. Plaintiff agrees that no evidence of significant side effects exists, but argues that such consideration was improper. (Pl.'s Mem. at 21-22.) However, the act requires consideration of "[t]he type, dosage, effectiveness, and side effects of any medication [the claimant] . . . ha[s] taken to alleviate [his] pain or other symptoms" when assessing the severity and nature of the claimant's symptoms. 20 C.F.R. § 404.1529(c)(3)(iv). Therefore, the ALJ did not err by considering that Plaintiff did not experience any side effects from his medication.

      8. The ALJ did not err in considering that Plaintiff drove himself to the hearing.

      When assessing the credibility of Plaintiff's statements regarding the persistence, intensity and limiting effects of his symptoms, the ALJ considered that Plaintiff drove a car for 40 miles to the hearing. (R. at 12.) Plaintiff contends that considering such a fact is illogical and

irrelevant. (Pl.'s Mem. at 24-25.) Defendant maintains that the ALJ properly considered this fact in reaching his credibility determination. (Def.'s Mem. at 22.)

It bears repeating that the ALJ is required to consider all of the facts provided by the Plaintiff in determining the credibility of Plaintiff's claim of disability. *Craig*, 76 F.3d at 594-95; SSR 96-7p, at 5, n.3; *see also* SSR 96-8p, at 13 (the ALJ's determination "must be based on all of the relevant evidence in the case record"). And the consideration that Plaintiff drove 40 miles proves relevant, as it demonstrated that Plaintiff could remain seated during that period and manipulate foot pedals. Therefore, by considering Plaintiff's testimony that he drove 40 miles to the hearing, the ALJ did not err.

Accordingly, because the ALJ properly considered the facts and because substantial evidence supports the ALJ's reasoning for finding that Plaintiff's statement regarding the intensity, persistence and limiting effects of his symptoms were not entirely credible, the ALJ did not err in assessing Plaintiff's credibility.

C. The ALJ made a factual error in assessing Plaintiff's medical records when determining Plaintiff's RFC.

Plaintiff argues that the ALJ erred in determining that Plaintiff could perform limited light work. Specifically, Plaintiff argues that the ALJ failed to account for Plaintiff's need for a cane when determining Plaintiff's work ability. (Pl.'s Mem. at 18-21.) The ALJ determined that Plaintiff would require a cane to get to his work station, but would not need one when performing limited, light work. (R. at 11.)

In support of his decision that Plaintiff would not need a cane when performing light work, the ALJ pointed to Plaintiff's most recent medical records from the Lloyd F. Moss Free Clinic and noted that those records did not even mention Plaintiff's use of a cane. (R. at 12.) However, this assertion contains a factual error, because the Lloyd F. Moss Free Clinic medical

24

records cite Plaintiff's cane use three times. (R. at 380, 391, 392.) First, the records indicate that Plaintiff was using a cane on March 23, 2012. (R. at 391.) Further, Plaintiff was instructed on proper use of a cane that he had brought to that appointment. (R. at 391-92.) Finally, during Plaintiff's check-up on February 25, 2013, the records again mentioned that Plaintiff used a cane. (R. at 380.) Defendant maintains that this error was harmless. (Def.'s Mem. at 17-20.)

Resolution of this issue must begin with a discussion of the application of the harmless error rule in a Social Security Disability case. In *Shineski v. Sanders*, a case involving review of the denial of veterans' claims for disability benefits, the Supreme Court held that the harmless error rule applies in both the civil and administrative contexts. 556 U.S. 396, 407 (2009). Although the Fourth Circuit has yet to address the application of *Sanders* to Social Security Disability cases in a published opinion, the Court in two unpublished opinions has applied the harmless error doctrine when reviewing Social Security appeals. *See Garner v. Astrue*, 436 F. App'x 224, 225 n.* (4th Cir. 2011) (unpublished) (finding that a drafting error constitutes harmless error); *Morgan v. Barnhart*, 142 F. App'x 716, 723 (4th Cir. 2005) (unpublished) (finding error by the ALJ regarding time restrictions for sitting and standing to be harmless). Consequently, this Court believes that the harmless error rule set forth in *Sanders* applies to Social Security Disability appeals; indeed, this Court has repeatedly applied the harmless error rule in past Social Security appeals. *Parrish v. Colvin*, 2014 WL 412558, at *11 (E.D.Va. Feb. 3, 2014); *Maitland v. Colvin*, 2013 WL 3788246, at *12 (E.D.Va. July 18, 2013); *Phelps v. Astrue*, 2012 WL 6803711, at *9 (E.D.Va. Dec. 10, 2012); *Nelson v. Astrue*, 2012 WL 3555409, at *8-9 (E.D.Va. July 31, 2012).

Having determined that the harmless error rule applies, the question then becomes whether the error here was harmless. The burden establishing that the error was harmful rests on

"the party attacking the agency's determination." *Sanders*, 556 U.S. at 409.  As the Court in

*Sanders* elaborated:

> To say that the claimant has the "burden" of showing that an error was harmful is not to impose a complex system of "burden shifting" rules or a particularly onerous requirement . . . . Often the circumstances of the case will make clear to the appellate judge that the ruling, if erroneous, was harmful and nothing further need be said. But, if not, then the party seeking reversal normally must explain why the erroneous ruling caused harm.

*Id.* at 410.  Thus, when reviewing a decision for harmless error, a court, among other things,

must look at:

> An estimation of the likelihood that the result would have been different, an awareness of what body . . . . has the authority to reach that result, a consideration of the error's likely effects on the perceived fairness, integrity, or public reputation of judicial proceedings, and a hesitancy to generalize too broadly about particular kinds of errors when the specific factual circumstances in which the error arises may well make all the difference.

*Id.* at 411-12.  And "where the circumstances of the case show a substantial likelihood of

prejudice, remand is appropriate so that the agency can decide whether consideration is

necessary." *McLeod v. Astrue*, 640 F.3d 881, 888 (9th Cir. 2010).

Defendant admits that a factual error occurred, but maintains that the error was harmless.

(Def.'s Mem. at 17-20.)  Although Plaintiff did not respond to Defendant's assertions of

harmless error, the Court agrees with the Supreme Court that "the circumstances of the case . . .

make clear . . . that the [erroneous] ruling was harmful . . . and nothing further need be said."

*Sanders*, 556 U.S. at 410.  As such, the Court recommends remand.

Here, the ALJ determined that Plaintiff could perform limited, light work without using a

cane and that Plaintiff would only need his cane to walk to his work station.  Performing light

work "requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls." 20 C.F.R. § 404.1567.

"Use of the cane indicates a limitation in the plaintiff's walking and standing and also indicates that he would have limited use of the arm in which he holds the cane." *Garver v. Colvin*, 2014 WL 1746976, at *5 (M.D. Pa. May 1, 2014).   Here, while reviewing Plaintiff's medical records to determine Plaintiff's RFC and use of a cane, the ALJ mistakenly relied on the fact that Plaintiff's most recent medical records failed to mention Plaintiff using a cane and, therefore, determined that Plaintiff did not need a cane while performing light work.  Without considering all of the evidence relating to the extent to which Plaintiff used a cane to walk or stand, it is unclear if Plaintiff maintained the ability to perform light work requiring such activities.

Courts have found that a RFC formulated by an ALJ who failed to take into account a claimant's cane use lacks the support of substantial evidence.  *See, e.g., Spaulding*, 379 F. App'x 776, 780 (10th Cir. 2010) (finding that when ALJ made a factually incorrect finding regarding claimant's cane use did not support that claimant did not medically require a cane); *Garver*, 2014 WL 1746976, at *6 (finding lack of substantial evidence to support ALJ's decision that claimant can perform light work when ALJ did not consider claimant's cane use); *Wooley v. Comm'r of Soc. Sec.*, 2013 WL 204677, at * 5 (S.D. Oh. Jan. 17, 2013) (claimant's RFC lacks support of substantial evidence when ALJ does not discuss all of the medical evidence pertaining to claimant's cane use or bases his determination on a mistaken assumption regarding claimant using the device).

Defendant asks this Court to ignore the error here, arguing that substantial evidence nevertheless supports the ALJ's RFC determination and that the RFC took into account

Plaintiff's medical need for a cane when finding that Plaintiff needed a cane to walk to his work station. (Def.'s Mem at 17-19.)   But this Court agrees with the Seventh Circuit's view that to do so:

> would defeat the entire purpose of harmless error, which is to ensure that the first-line tribunal is not making serious mistakes or omissions. When the decision of that tribunal on matters of fact is unreliable because of serious mistakes or omissions, the reviewing court must reverse unless satisfied that no reasonable trier of fact could have come to a different conclusion, in which even a remand would be pointless. In this context, an error in failing to analyze. . . important evidence is not harmless simply because the ALJ could have addressed that evidence in a way that would survive substantial-evidence review.

*Walters v. Astrue*, 444 F. App'x 913, 919 (7th Cir. 2011) (unpublished) (internal citations and quotation marks omitted).

The ALJ must evaluate all relevant evidence in the record when formulating Plaintiff's RFC. SSR-96-8p. Here, the ALJ stated that certain medical records did not reference Plaintiff's use of a cane; however, the cited records, in fact, did reference Plaintiff's use of a cane. Consequently, the ALJ omitted consideration of relevant evidence pertaining to Plaintiff's cane use when formulating Plaintiff's RFC by stating that information did not exist, when it actually did. Because the ALJ's RFC assessment was based in part upon incorrect facts, the Court cannot find that substantial evidence supports the ALJ's RFC assessment. Therefore, the error cannot be harmless.

When addressing similar errors, other courts have indicated that the proper remedy is a remand to "develop the record with evidence concerning medical necessity . . . for the use of the cane, and its effect on [the claimant's] RFC." *Spaulding*, 379 F. App'x at 781; *Graver*, 2014 WL 1746976, at *6-7, *Wooley*, 2013 WL 204677, at * 5.   That is so, because when the facts require a reweighing of evidence, the proper remedy requires a remand to allow the ALJ the opportunity to

first address the omitted evidence.  42 U.S.C. § 405(g); *Radford*, 734 F.3d at 288; *Meyer v. Astrue*, 662 F.3d 700 (4th Cir. 2011).  Therefore, because the ALJ must reweigh the evidence while considering all of Plaintiff's treatment records and cane use during the relevant time, the Court recommends that the case be remanded for reconsideration of the evidence as correctly developed.

## VI. CONCLUSION

For the reasons set forth above, the Court recommends that Plaintiff's Motion for Summary Judgment  (ECF No. 9) be GRANTED; that Defendant's Motion for Summary Judgment (ECF No. 13) be DENIED; and that the final decision of the Commissioner be REVERSED and REMANDED for further administrative proceedings in accordance with this report and recommendation.

Let the Clerk forward a copy of this Report and Recommendation to the Honorable James R. Spencer and to all counsel of record.

## NOTICE TO PARTIES

**Failure to file written objections to the proposed findings, conclusions and recommendations of the Magistrate Judge contained in the foregoing report within fourteen (14) days after being served with a copy of this report may result in the waiver of any right to a *de novo* review of the determinations contained in the report and such failure shall bar you from attacking on appeal the findings and conclusions accepted and adopted by the District Judge except upon grounds of plain error.**

/s/

David J. Novak
United States Magistrate Judge

Richmond, Virginia
Date: <u>August 25, 2014</u>

29